## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

IN RE:

LARRY JORDAN JEFFERSON

              Debtor.

Case No. 12-12179
(Chapter 13)

## ARVEST BANK'S MOTION TO ENFORCE
## SETTLEMENT AGREEMENT TOGETHER WITH BRIEF IN SUPPORT

Arvest Bank ("Arvest") for its Motion to Enforce Settlement Agreement (the "Motion") states:

**A.      Facts.**

1.      Prior to bankruptcy, Arvest sued Debtor and others in the District Court of Comanche County, State of Oklahoma, styled *Arvest Bank v. Larry Jordan Jefferson et al.*, Case No. CJ-2011-796 (the "Foreclosure Case")

2.      Debtor filed this Chapter 13 bankruptcy case the day before Arvest was scheduled to confirm the foreclosure sheriff sale of various parcels of real property in which Debtor claims an interest, but to which Debtor is not title owner (the "Foreclosure Property").

3.      Arvest and LEDA separately filed motions seeking relief from the automatic stay regarding the Foreclosure Property (collectively the "Stay Relief Motions").

4.      Moreover, creditors Arvest, LEDA, and City National Bank of Lawton, Oklahoma ("CNB"), each objected to Debtor's Chapter 13 Plan (collectively the "Plan Objections").

5.      The Stay Relief Motions were set for hearing on July 17, 2012, at which time Arvest, LEDA, CNB and Debtor met and entered into settlement discussions.

6.      The parties reached a stipulated agreement that was read into the record in open Court, in the presence of the Court and all the parties (the "Settlement Agreement").

7.      According to the Transcript of the July 17, 2012 hearing (the "Transcript"), the terms of the Settlement Agreement, as read into the record, are as follows:

```
3          THE COURT:  Case Number 12-12179, the debtor is
4   Jefferson.   Comes on for final hearing by Arvest Bank's motion
5   for relief of the stay, and the same by Lawton Economic
6   Development Authority.
7          I understand we have a settlement of the case; is that
8   correct?
```

(Transcript, p. 2, ll. 3-8.)

***

```
7          Mr. Rosell.
8           MR. ROSELL:  Thank you, Your Honor.  The parties have
9    agreed to the following.  Today the parties have agreed for the
10   stay to be lifted on all real property pending the written
11   authorization from Lawton Economic Development Authority of the
12   following terms.  That the trust, which is the Jefferson --
13   Larry Jefferson Jordan, or Larry Jefferson Trust, will receive
14   the sum of $42,500 above the sheriff's sale price of $352,000;
15   that the current occupant of the funeral home site shall be
16   allowed to stay at that site until November 1, 2012, with the
17   possibility of staying through the end of the year if LEDA,
18   which stands for Lawton Economic Development Authority, does
19   not need the possession of the property for construction
20   purposes.
21          THE COURT:  And who makes that decision?
22          MR. ROSELL:  LEDA.
23          THE COURT:  Okay.
24          MR. ROSELL:  The confirmation of the Chapter 13 plan
25   shall be continued for 60 days, and if the Court's docket
```

```
1   provides, resetting the hearing on the September 18th, 2012 --
2           THE COURT:  Why are we on continuing the confirmation?
3           MR. ROSELL:  Because the agreement between the parties
4   reached today is contingent upon LEDA formally approving the
5   payment of --
6           THE COURT:  Okay.
7           MR. ROSELL:  -- the additional amount of -- for the
8   property.
9           THE COURT:  Okay.  I understand.
```

10          MR. ROSELL:  And going back on that, Your Honor, the
11   written authorization from LEDA will be presented to this Court
12   by Arvest Bank on an ex parte basis, and upon presentment of
13   the written whatever it is, whether it's the minutes of LEDA or
14   on the letterhead of LEDA approving the agreement, at that
15   point the Court would enter the final -- a final order, or the
16   actual order lifting the stay, because it's contingent upon
17   LEDA approving the 42-5.
18          THE COURT:  Okay.  I will need signatures from all
19   parties on that final order.
20          MR. ROSELL:  Absolutely.  And it will be an agreed
21   order presented to the Court --
22          THE COURT:  Okay.
23          MR. ROSELL:  -- in that manner.
24      Okay.  So the parties have agreed that the dollar amount
25   owed on the debt that is encumbering the real property is the

                                                              5
1    sum of $350,123 as of today with some additional amounts.  And
2    the way I would describe this to the Court is, I would like to
3    read into the record what the 350,123 represents, and then read
4    into the record what it does not represent.
5          The 350,123 represents the following.  Arvest Bank's proof
6    of claim in the amount of 243,857; Arvest's -- the accrued
7    interest on Arvest Bank's proof claim in the amount of $77.29
8    at 78 days, which the date that the proof of claim was filed
9    through today; all legal fees of Arvest Bank through June 30th.
10   It also includes City National Bank's proof of claim in the
11   amount of 83,687.18, with -- plus the accrued interest on that
12   proof of claim at $33.58 per diem, or per day, at 78 days,
13   which is the date of filing of the proof of claim through
14   today.

(Transcript, p. 3, l. 8 – p. 5, l. 14.)

***

5          Now, what it does not represent is Arvest's fees,
6    attorney's fees incurred from July 1 to the present, but Arvest
7    Bank has agreed to cap those fees to be no higher than $6,000.
8          The 350,123 amount does not include the attorney's fees
9    incurred by City National Bank's attorney Ed Dzalio for the
10   time period commencing May 1, 2012 to today.

3

11          Now, the parties have agreed with regard to Mr. Dzalio's

12   attorney's fees from May 1 to today is -- how that will be

13   resolved is he will submit his attorney's fees to Mr. Cramer,

14   and in the event that Mr. Cramer and the debtor do not agree

15   the those fees or there's a dispute on these fees, Mr. Dzalio

16   will come to the Court with an application.

17          Okay.  Now, we would -- Your Honor, we would also like the

18   Court today, or we -- I don't know if we would call this a

19   finding or a stipulation, but in any event, the parties have

20   agreed to the following.

21          THE COURT:  It would be a stipulation then.

22          MR. ROSELL:  It would be a stipulation.  The six

23   tracts of property which are the subject of Arvest Bank's

24   motion to lift stay, and also the subject of the motion to lift

25   stay filed by LEDA and City National Bank, are titled in the

                                                              7

1   name of Larry Jefferson Trust.  Larry Jefferson Trust is not a

2   party, nor a debtor, or a co-debtor in this bankruptcy.

3          The third finding is that the payment of the sales

4   proceeds for the six tracts of property shall be paid to the

5   party in current title of the tracts, the titleholder.

6          THE COURT:  In other words, the trust?

7          MR. ROSELL:  The trust.

8          Okay.  Finally, the last few here.  Okay.  LEDA will agree

9   to pay the actual and reasonable moving expenses of the

10   business occupants in accordance with the policies that have

11   previously been followed by the Lawton Urban Renewal Authority,

12   which is different than LEDA.  And Lawton Urban Renewal

13   Authority has policies that they previously used with other

14   property owners, and those policies are to be followed with

15   regard to moving the business occupant from these subject

16   properties.

17          THE COURT:  We're talking about the -- we're not

18   talking about the funeral home operator?

19          MR. ROSELL:  The funeral home operator.

20          THE COURT:  Okay.

21          MR. ROSELL:  And I didn't know exactly who the -- how

22   to -- the legal name of the funeral home operator, but

23   essentially, that's what it is.

24          THE COURT:  Yeah.  The one who is allowed to stay

25   there until November 1st, or until the first of the year --

                              4

8

```
1          MR. ROSELL:  Yes, Your Honor.
2          THE COURT:  -- if they don't need the property.
3          MR. ROSELL:  That's correct.
4          THE COURT:  Okay.
5          MR. ROSELL:  Yes.
6          THE COURT:  Okay.
7          MR. ROSELL:  And then the final stipulated agreement,
8   or term of the agreement between the parties is that Arvest
9   Bank's counsel will take the first step of drafting the
10  settlement agreement and the proposed agreed order, and in
11  return there will be a reserve of $3,000 in attorney's fees
12  payable to Arvest bank's counsel for that work.  And that
13  concludes our agreement.
14         THE COURT:  Okay.
15         MR. ROSELL:  Announced agreement.
16         THE COURT:  If each party represented by counsel will
17  go to a microphone and say whether you agree or disagree with
18  the agreement as stated by Mr. Rosell.
19         MR. MCMURRY:  Lawton Economic Development Authority
20  through counsel agrees with the proposal.
21         THE COURT:  Okay.  And if you will give your name
22  again, please.
23         MR. MCMURRY:  Excuse me, Your Honor.  John McMurry.
24         THE COURT:  Thank you, Mr. McMurry.
25         MR. DZALIO:  Ed Dzalio on behalf of City National
```

9

```
1   Bank, and we agree with the announcement made by counsel for
2   Arvest.
3          THE COURT:  Thank you, Mr. Dzalio.
4      Mr. Cramer.
5          MR. CRAMER:  Your Honor, I just first of all would say
6   that in addition to the agreement -- and for the most part we
7   are in agreement.  As to the actual numbers as far as we have
8   no issue with the judgment amount for Arvest, no issue with
9   respect to the per diem.  I have not previously been presented
10  an attorney fee bill.  I've asked for the opportunity to review
11  those before we say yay, nay, or otherwise.
12         THE COURT:  From Arvest Bank or City?
13         MR. CRAMER:  Yes.
```

```
14              THE COURT:  Okay.
15              MR. CRAMER:  Well, for City also.  I mean, they are
16   going to present those.
17              THE COURT:  Yes.
18              MR. CRAMER:  We would like to review those before we
19   say yes, we'll pay them.
20       In addition, we're agreeable to a conditional lifting of
21   the stay pending LEDA being able to meet -- meet what they've
22   offered --
23              THE COURT:  Uh-huh.
24              MR. CRAMER:  -- and got done today.  And what I have
25   previously suggested is that maybe we even continue this
```

(Transcript, p. 6, l. 5 – p. 9, l. 24.)

\*\*\*

```
7               THE COURT:  Okay.  The debtor's counsel has been
8    provided with a list of attorney fees by the -- by Arvest Bank.
9        Mr. Cramer, do you agree with those?
10              MR. CRAMER:  Yes, Your Honor.  The attorney fees
11   presented by Arvest in the total amount of 55 -- 5,521.25 with
12   cost of 435.55 I find to be reasonable.
13              THE COURT:  Okay.  Okay.  Thank you.  So then we're
14   just waiting on the attorney fees to be submitted by City Bank,
15   and that will be done later.
16              MR. DZALIO:  Your Honor, we reached an agreement that
17   I'll prepare a fee application --
18              THE COURT:  Right.
19              MR. DZALIO:  -- or a bill and submit it to Mr. Cramer,
20   and obtain a stipulation.  If we can't stipulate, I'll submit
21   one to you.
```

(Transcript, p. 16, ll. 7 – 21.)

8.  A copy of the Transcript of the July 17, 2012 hearing is attached as **Exhibit 1**.

9.  On July 26, 2012, LEDA agreed to the settlement terms through its formal written "Resolution 12-10."  A copy of Resolution 12-10 is attached as **Exhibit 2**.

10.     Counsel for LEDA sent a copy of Resolution 12-10 to counsel for Debtor, Arvest and CNB on August 18, 2012.

11.     Following the July 17, 2012 hearing, the parties attempted to memorialize the Settlement Agreement, which culminated in a final document circulated to the parties.

12.     Arvest, LEDA, and CNB have each signed the memorialized Settlement Agreement.

13.     Counsel for Arvest contacted Counsel for Debtor by telephone on August 22, 2012, and was informed that Debtor was scheduled to meet with his counsel that day to sign the memorialized Settlement Agreement, as well as a final order for relief from the automatic stay related to the Foreclosure Properties.

14.     Subsequently, counsel for Debtor contacted counsel for Arvest and stated that Debtor refused to sign the memorialized Settlement Agreement.

15.     The Foreclosure Property is situated within a project area to be revitalized in part by the efforts of creditor Lawton Economic Development Authority ("LEDA").

16.     As Debtor fully knows, development activities are to begin October 1, 2012, or as soon thereafter as possible and, consequently, time is of the essence.

17.     Further, Arvest is being forced to incur substantial legal fees and costs in prosecuting this Motion because Debtor refuses to fulfill his obligations.  Because of the Debtor's actions, Arvest should be awarded its fees of not less than $2,200.00, and costs associated with this Motion.

**B.      The Court should Enforce the July 17, 2012 Settlement Agreement.**

When the Stay Relief Motions were called by the Court for hearing, the parties accepted an opportunity to meet in the Court's conference room to discuss settlement of the issues.  After negotiating in good faith, the parties reached a stipulated settlement agreement.  The parties then returned to the court room to announce the agreement.

The parties present during the reading of the agreement into the record were the Chapter 13 Trustee, Arvest, LEDA, CNB and Debtor.  Although the presence of the Chapter 13 Trustee and participation of his counsel are not formally noted in the Transcript, they were each present and neither objected on the record.  Further, the Chapter 13 Trustee's counsel is recorded in the Transcript as "Unidentified Female Speaker" beginning on page 11.

It is a well-established principle that a party may not unilaterally withdraw from its agreed stipulations.  See, *In re Peck*, 155 B.R. 301, 306, 28 (Bankr. D. Conn. 1993)(citing *United States v. New England Teamsters and Trucking Industry Pension Fund,* 737 F.2d 1274, 1278 (2d Cir.1984)).  Further, it is undisputed that Debtor stipulated to the above terms on July 17, 2012, as those terms were read on the record and approved by all present.  Consequently, the Settlement Agreement should be enforced.

**C.     Requested Relief**

Wherefore, Arvest Bank requests that the Court enter an Order (i) approving the stipulated Settlement Agreement as read into the record on July 17, 2012, (ii) granting relief from the automatic stay and abandoning the Foreclosure Properties, (iii) awarding Arvest its attorneys' fees and costs incurred in prosecuting this Motion, and (iv) awarding such further relief as the Court deems equitable.

Respectfully submitted,

s/Jeffrey E. Tate
Armando J. Rosell (OBA # 18821)
Jeffrey E. Tate (OBA # 17150)
MULINIX OGDEN HALL & LUDLAM, PLLC
210 Park Avenue, Suite 3030
Oklahoma City, Oklahoma 73102
405.232.3800  (T) /405.232.8999  (F)
jtate@lawokc.com
rosell@lawokc.com
**ATTORNEYS FOR ARVEST BANK**

8

## CERTIFICATE OF MAILING

This is to certify that on the 10th day of September, 2012, the above pleading was electronically transmitted to the Clerk of the Court using the ECF System for filing, and was electronically served on that day via CM/ECF on the following:

Heather A. Buchberger, on behalf of Creditor Mercedes-Benz Financial Services f/k/a DCFS, USA LLC

John Cramer, on behalf of Debtor

Ed Dzialo, on behalf of Creditor, City National Bank & Trust

John T. Hardeman, Chapter 13 Trustee

Robert Hauge, on behalf of Springleaf Financial Services, Inc., Formerly Known As American General Financial Services, Inc., D/B/A American General Financial Services (De), Inc.

John C. McMurry, on behalf of Lawton Economic Development Authority

Don L. Smith, on behalf of Creditor Don L. Smith

U.S. Trustee

Further, I hereby certify that on the 10th day of September, 2012, I served the attached document by first class U.S. mail, postage prepaid on the following listed on the matrix attached hereto and/or listed below, who are not registered participants of the ECF System:

| | | |
|---|---|---|
| AAFES/MIL STAR/EXCHANGE<br>PO BOX 740933<br>DALLAS TX 75374 | BARBARA BURK, COMANCHE<br>COUNTY TREASURER<br>315 SW 5TH STREET, ROOM 300<br>LAWTON OK 73501-4371 | BMW FINANCIAL SERVICES<br>PO BOX 3608<br>DUBLIN OH 43016 |
| BOARD OF COUNTY<br>COMMISSIONERS<br>COMANCHE COUNTY<br>COURTHOUSE<br>315 SW 5TH STR, ROOM 502<br>LAWTON OK 73501-4389 | CAPITAL ONE<br>PO BOX 30285<br>SALT LAKE CITY UT 84130-0285 | DAN BATCHELOR<br>ATTORNEY AT LAW<br>301 NORTH HARVEY #200<br>OKLAHOMA CITY OK 73102 |
| DANNY C WILLIAMS<br>CHARNEY, BUSS & WILLIAMS PC<br>12150E 96TH ST N #202<br>OWASSO OK 74055 | DWAYNE CLOPTON<br>303 SW H AVENUE<br>LAWTON OK 73501 | FIRST NATIONAL CREDIT CARD<br>PO BOX 5097<br>SIOUX FALLS SD 57117-5097 |
| FORD MOTOR CREDIT<br>PO BOX 152271<br>IRVING TX 75015-2271 | FORD MOTOR CREDIT COMPANY<br>DEPT 55953<br>PO BOX 55000<br>DETROIT MI 48255-0953 | FORT SILL NATIONAL BANK<br>PO BOX 33009<br>FORT SILL OK 73503 |
| GE CAPITAL RETAIL<br>BANK/DILLARDS<br>PO BOX 965023<br>ORLANDO FL 32896-5023 | GE CAPITAL RETAIL BANK/JC<br>PENNEY<br>PO BOX 965008<br>ORLANDO FL 32896-5008 | GMAC MORTGAGE<br>ATTN: CUSTOMER CARE<br>PO BOX 4622<br>WATERLOO IA 50704-4622 |

| | | |
|---|---|---|
| INTERNAL REVENUE SERVICE<br>PO BOX 7346<br>PHILADELPHIA PA 19101-7346 | JERRY C. CUDE<br>ATTORNEY AT LAW<br>315 SW 5TH ST, RM 502<br>LAWTON OK 73501 | JOHN HOLT AUTO GROUP INC.<br>PO BOX 430<br>CHICKASHA OK 73023 |
| JOHNNIE L. SWANSON<br>620 NE 63RD STREET<br>OKLAHOMA CITY OK 73105 | LAMUN, MOCK, CUNNYNHAM &<br>DAVIS PC<br>5613 N CLASSEN BLVD<br>OKLAHOMA CITY OK 73118 | LAWTON URBAN RENEWAL<br>AUTHORITY<br>C/O JOHN C. MACKEY JR.<br>431 SW C AVE #100<br>LAWTON OK 73501 |
| LYN MARTIN-DIEHL<br>ATTORNEY AT LAW<br>PO BOX 53039<br>OKLAHOMA CITY OK 73152 | MICHAEL J. CORRALES<br>431 SW C AVENUE<br>LAWTON OK 73501 | MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS<br>PO BOX 2026<br>FLINT MI 48501-2026 |
| MWR-CHASE BANK<br>PO BOX 15298<br>WILMINGTON DE 19850-5298 | OKLAHOMA EMPLOYMENT<br>SECURITY COMMISSION<br>PO BOX 52003<br>OKLAHOMA CITY OK 73152-2003 | OKLAHOMA TAX COMMISSION<br>LEGAL DIVISION<br>120 N. ROBINSON, STE 2000<br>OKLAHOMA CITY OK 73102-7471 |
| ONE MAIN FINANCIAL<br>1412 NW SHERIDAN ROAD #A<br>LAWTON OK 73505 | ORCHARD BANK/HSBC<br>PO BOX 80084<br>SALINAS CA 93912-0084 | PROTECTION 1<br>PO BOX 49292<br>WICHITA KS 67201-9292 |
| QUINN TAYLOR<br>603 NE CARVER AVENUE<br>LAWTON OK 73507 | SECURITY BANKCARD CENTER<br>PO BOX 6139<br>NORMAN OK 73070-6139 | STATE OF OKLAHOMA<br>MEDICAL EXAMINER<br>901 NORTH STONEWALL<br>OKLAHOMA CITY OK 73117 |
| TOWERS PLUMBING HEATING &<br>AC<br>101 NW COLUMBIA AVE<br>LAWTON OK 73507 | WARRENS IMPORTS INC.<br>130 SW B AVENUE<br>LAWTON OK 73501 | |

s/ Jeffrey E. Tate
Jeffrey E. Tate

```
1              IN THE UNITED STATES BANKRUPTCY COURT FOR THE
                     WESTERN DISTRICT OF OKLAHOMA
2

3   In re:                        )
                                  )
4   LARRY JORDAN JEFFERSON,       )
                  Debtor,         )   Case No. 12-12179-NLJ
5                                 )   Chapter 13
                                  )   Final Hearing on Arvest
6                                 )   Bank's Motion to Lift Stay
    _____   July 17, 2012
7

8   APPEARANCES:

9   For the Debtor:                  John C. Cramer
                                     Cramer Law Firm
10                                   1014 SW B Avenue
                                     Lawton, OK 73501
11

12  For Arvest Bank:                 Armondo J. Rosell
                                     3030 Oklahoma Tower
13                                   210 West Park Avenue
                                     Oklahoma City, OK 73102
14

15  For City National Bank           Edward W. Dzalio
     & Trust Company:                Goodlove Mayhall Dzalio
16                                    Dutcher & Erwin
                                     802 SW C, Box 29
17                                   Lawton, OK 73502

18
    For Lawton Economic               John C. McMurry
19   Development Authority:           Center for Economic
                                      Development Law, PLLC
20                                   301 North Harvey
                                     Suite 200
21                                   Oklahoma City, OK 73102

22

23

24

25
```

*B. JEANNE RING, RDR*
UNITED STATES COURT REPORTER
*200 NW 4th Street, Suite 3011E*
*Oklahoma City, OK 73102*
*jeanne_ring@okwd.uscourts.gov - ph (405) 609-5603*

EXHIBIT
1

1    (The following was transcribed from an electronic

2  recording, had on July 17, 2012:)

3         THE COURT:  Case Number 12-12179, the debtor is

4  Jefferson.  Comes on for final hearing by Arvest Bank's motion

5  for relief of the stay, and the same by Lawton Economic

6  Development Authority.

7    I understand we have a settlement of the case; is that

8  correct?

9         MR. ROSELL:  Yes, Your Honor.  Armondo Rosell for the

10 debtor -- I'm mean, not for the debtor, but for Arvest Bank.

11 Excuse me.

12        THE COURT:  You could be for a debtor if you want to.

13        MR. ROSELL:  Your Honor, I was having a little bit of

14 a sugar issue just a few minutes ago, so I was a little unsure.

15        THE COURT:  Okay.  Do you want to state the details of

16 the settlement?

17        MR. ROSELL:  Yes.  Okay.  Your Honor, all parties have

18 agreed to the following.

19        THE COURT:  And who are all the parties?

20        MR. ROSELL:  All the parties --

21        THE COURT:  You'll need to go to the microphone,

22 please, so we can pick you up.

23        MR. DZIALO:  Ed Dzialo.  I represent City National

24 Bank and Trust Company, second mortgageholder in the

25 foreclosure issue.

3

```
 1              THE COURT:  Okay.
 2              MR. MCMURRY:  John McMurry for Lawton Economic
 3    Development Authority, party in interest.
 4              MR. CRAMER:  John Cramer on behalf of the debtor, Your
 5    Honor.
 6              THE COURT:  Okay.
 7         Mr. Rosell.
 8              MR. ROSELL:  Thank you, Your Honor.  The parties have
 9    agreed to the following.  Today the parties have agreed for the
10    stay to be lifted on all real property pending the written
11    authorization from Lawton Economic Development Authority of the
12    following terms.  That the trust, which is the Jefferson --
13    Larry Jefferson Jordan, or Larry Jefferson Trust, will receive
14    the sum of $42,500 above the sheriff's sale price of $352,000;
15    that the current occupant of the funeral home site shall be
16    allowed to stay at that site until November 1, 2012, with the
17    possibility of staying through the end of the year if LEDA,
18    which stands for Lawton Economic Development Authority, does
19    not need the possession of the property for construction
20    purposes.
21              THE COURT:  And who makes that decision?
22              MR. ROSELL:  LEDA.
23              THE COURT:  Okay.
24              MR. ROSELL:  The confirmation of the Chapter 13 plan
25    shall be continued for 60 days, and if the Court's docket
```

1   provides, resetting the hearing on the September 18th, 2012 --

2           THE COURT:  Why are we on continuing the confirmation?

3           MR. ROSELL:  Because the agreement between the parties

4   reached today is contingent upon LEDA formally approving the

5   payment of --

6           THE COURT:  Okay.

7           MR. ROSELL:  -- the additional amount of -- for the

8   property.

9           THE COURT:  Okay.  I understand.

10          MR. ROSELL:  And going back on that, Your Honor, the

11  written authorization from LEDA will be presented to this Court

12  by Arvest Bank on an ex parte basis, and upon presentment of

13  the written whatever it is, whether it's the minutes of LEDA or

14  on the letterhead of LEDA approving the agreement, at that

15  point the Court would enter the final -- a final order, or the

16  actual order lifting the stay, because it's contingent upon

17  LEDA approving the 42-5.

18          THE COURT:  Okay.  I will need signatures from all

19  parties on that final order.

20          MR. ROSELL:  Absolutely.  And it will be an agreed

21  order presented to the Court --

22          THE COURT:  Okay.

23          MR. ROSELL:  -- in that manner.

24      Okay.  So the parties have agreed that the dollar amount

25  owed on the debt that is encumbering the real property is the

1  sum of $350,123 as of today with some additional amounts.  And

2  the way I would describe this to the Court is, I would like to

3  read into the record what the 350,123 represents, and then read

4  into the record what it does not represent.

5      The 350,123 represents the following.  Arvest Bank's proof

6  of claim in the amount of 243,857; Arvest's -- the accrued

7  interest on Arvest Bank's proof claim in the amount of $77.29

8  at 78 days, which the date that the proof of claim was filed

9  through today; all legal fees of Arvest Bank through June 30th.

10  It also includes City National Bank's proof of claim in the

11  amount of 83,687.18, with -- plus the accrued interest on that

12  proof of claim at $33.58 per diem, or per day, at 78 days,

13  which is the date of filing of the proof of claim through

14  today.

15          THE COURT:  So is the Arvest interest of $77.29, is

16  that per day also?

17          MR. ROSELL:  Yes, Your Honor.

18          THE COURT:  Okay.

19          MR. ROSELL:  And that's times 78 days.

20          THE COURT:  Okay.

21          MR. ROSELL:  So through today.

22      It also includes the ad valorum tax that is on the

23  property, and I don't have the exact dollar amount.  Okay.

24      (Off-the-record discussion.)

25          MR. ROSELL:  Your Honor, the number we're going to use

1   for the ad valorum tax is the number that the Comanche County

2   Treasurer's Office filed in their proof of claim, which is

3   6,901.80.  And that is the -- constitutes the inclusion of the

4   350,123.

5       Now, what it does not represent is Arvest's fees,

6   attorney's fees incurred from July 1 to the present, but Arvest

7   Bank has agreed to cap those fees to be no higher than $6,000.

8       The 350,123 amount does not include the attorney's fees

9   incurred by City National Bank's attorney Ed Dzalio for the

10  time period commencing May 1, 2012 to today.

11      Now, the parties have agreed with regard to Mr. Dzalio's

12  attorney's fees from May 1 to today is -- how that will be

13  resolved is he will submit his attorney's fees to Mr. Cramer,

14  and in the event that Mr. Cramer and the debtor do not agree

15  the those fees or there's a dispute on these fees, Mr. Dzalio

16  will come to the Court with an application.

17      Okay.  Now, we would -- Your Honor, we would also like the

18  Court today, or we -- I don't know if we would call this a

19  finding or a stipulation, but in any event, the parties have

20  agreed to the following.

21          THE COURT:  It would be a stipulation then.

22          MR. ROSELL:  It would be a stipulation.  The six

23  tracts of property which are the subject of Arvest Bank's

24  motion to lift stay, and also the subject of the motion to lift

25  stay filed by LEDA and City National Bank, are titled in the

1 name of Larry Jefferson Trust.  Larry Jefferson Trust is not a

2 party, nor a debtor, or a co-debtor in this bankruptcy.

3        The third finding is that the payment of the sales

4 proceeds for the six tracts of property shall be paid to the

5 party in current title of the tracts, the titleholder.

6             THE COURT:  In other words, the trust?

7             MR. ROSELL:  The trust.

8        Okay.  Finally, the last few here.  Okay.  LEDA will agree

9 to pay the actual and reasonable moving expenses of the

10 business occupants in accordance with the policies that have

11 previously been followed by the Lawton Urban Renewal Authority,

12 which is different than LEDA.  And Lawton Urban Renewal

13 Authority has policies that they previously used with other

14 property owners, and those policies are to be followed with

15 regard to moving the business occupant from these subject

16 properties.

17             THE COURT:  We're talking about the -- we're not

18 talking about the funeral home operator?

19             MR. ROSELL:  The funeral home operator.

20             THE COURT:  Okay.

21             MR. ROSELL:  And I didn't know exactly who the -- how

22 to -- the legal name of the funeral home operator, but

23 essentially, that's what it is.

24             THE COURT:  Yeah.  The one who is allowed to stay

25 there until November 1st, or until the first of the year --

1        MR. ROSELL:  Yes, Your Honor.

2        THE COURT:  -- if they don't need the property.

3        MR. ROSELL:  That's correct.

4        THE COURT:  Okay.

5        MR. ROSELL:  Yes.

6        THE COURT:  Okay.

7        MR. ROSELL:  And then the final stipulated agreement,

8  or term of the agreement between the parties is that Arvest

9  Bank's counsel will take the first step of drafting the

10 settlement agreement and the proposed agreed order, and in

11 return there will be a reserve of $3,000 in attorney's fees

12 payable to Arvest bank's counsel for that work.  And that

13 concludes our agreement.

14        THE COURT:  Okay.

15        MR. ROSELL:  Announced agreement.

16        THE COURT:  If each party represented by counsel will

17 go to a microphone and say whether you agree or disagree with

18 the agreement as stated by Mr. Rosell.

19        MR. MCMURRY:  Lawton Economic Development Authority

20 through counsel agrees with the proposal.

21        THE COURT:  Okay.  And if you will give your name

22 again, please.

23        MR. MCMURRY:  Excuse me, Your Honor.  John McMurry.

24        THE COURT:  Thank you, Mr. McMurry.

25        MR. DZALIO:  Ed Dzalio on behalf of City National

1  Bank, and we agree with the announcement made by counsel for

2  Arvest.

3          THE COURT:  Thank you, Mr. Dzalio.

4      Mr. Cramer.

5          MR. CRAMER:  Your Honor, I just first of all would say

6  that in addition to the agreement -- and for the most part we

7  are in agreement.  As to the actual numbers as far as we have

8  no issue with the judgment amount for Arvest, no issue with

9  respect to the per diem.  I have not previously been presented

10  an attorney fee bill.  I've asked for the opportunity to review

11  those before we say yay, nay, or otherwise.

12          THE COURT:  From Arvest Bank or City?

13          MR. CRAMER:  Yes.

14          THE COURT:  Okay.

15          MR. CRAMER:  Well, for City also.  I mean, they are

16  going to present those.

17          THE COURT:  Yes.

18          MR. CRAMER:  We would like to review those before we

19  say yes, we'll pay them.

20      In addition, we're agreeable to a conditional lifting of

21  the stay pending LEDA being able to meet -- meet what they've

22  offered --

23          THE COURT:  Uh-huh.

24          MR. CRAMER:  -- and got done today.  And what I have

25  previously suggested is that maybe we even continue this

1  hearing consistent with the confirmation, the new confirmation

2  date for the 13th if for whatever reason -- I think everybody's

3  expectation is this deal will be approved.

4          THE COURT:  Uh-huh.

5          MR. CRAMER:  But maybe set it for a future date just

6  in case it's not.

7          THE COURT:  Well, especially since the attorney fees

8  are still not finalized.

9          MR. CRAMER:  But otherwise, we're in agreement, Your

10 Honor.

11         THE COURT:  Okay.

12    Mr. Rosell.

13         MR. ROSELL:  Your Honor, I thought that we had an

14 agreement in that regard.  I know that I spoke with Mr. Cramer

15 about our fees, and what we all want to do here today is end

16 this and not incur any additional fees.

17         THE COURT:  Okay.  Do you know what your fees are?  Do

18 you have a list of your fees?

19         MR. ROSELL:  Well, Your Honor, I -- I don't have it

20 with me.  I can certainly provide that to Mr. Cramer and to the

21 Court.  What I was going to suggest to the Court is, so that to

22 avoid an attorney's fees -- an attorney's fees dispute is that

23 Arvest -- or that I will submit my actual bills that I billed

24 to Arvest Bank, and to the extent Arvest Bank paid those, then

25 those are the fees, whether they -- whatever that number is.

1   And -- and there's no dispute as to the reasonableness of the

2   fees or -- that I don't have to come back up here with an

3   expert witness and -- and establish what my fees are and incur

4   additional fees.  That's not what our intent is, and I --

5          THE COURT:  Let's ask Mr. Cramer.  Do you agree with

6   that, whatever Arvest Bank has paid?

7          MR. CRAMER:  Personally, Judge, no.  I would like --

8          THE COURT:  Then there is no agreement.  It's as

9   simple as that.  We either agree or we don't.

10      Now, if you can call your office or call Arvest Bank and

11  have them fax right now a list of those fees, we'll give those

12  to Mr. Cramer and we'll get those on the record, and we won't

13  leave until that is done.

14         MR. ROSELL:  I can -- I can make that happen, Your

15  Honor.

16         THE COURT:  Okay.  Why don't we all just stand down.

17  If you will go use the telephone.  Now, our fax number is

18  609-5679.  609-5679.  Or they can e-mail it to you and you can

19  show it on the attachment.

20         MR. ROSELL:  I can get it faxed.

21         THE COURT:  Okay.

22         UNIDENTIFIED FEMALE SPEAKER:  Your Honor --

23         THE COURT:  Yes.

24         UNIDENTIFIED FEMALE SPEAKER:  -- since Mr. Tate is

25  still here on behalf of Arvest, if -- there are just a couple

1  issues I could raise, and I hate to do this.  One is simple.

2  I'm not sure we have a confirmation docket the 18th.  I believe

3  --

4           THE COURT:  No.  Either the 11th or the 25th.

5           UNIDENTIFIED FEMALE SPEAKER:  And that is a minor

6  thing, I believe.  The bigger problem the trustee may end up

7  having is that the debtor has filed this bankruptcy and treated

8  this property as somehow being property of this bankruptcy

9  estate, but now it appears that any excess funds would be paid

10 to the trust rather than be a part of this bankruptcy estate,

11 and the trustee is going to have a problem with that.

12           MR. DZALIO:  May I offer some thoughts on that, Your

13 Honor?

14           THE COURT:  If you go to the microphone.

15           MR. DZALIO:  If you look at the style of this case,

16 it's Larry Jordan Jefferson.  Then you open up the bankruptcy

17 petition and you figure out that the trust is listed, the trust

18 assets are listed, Jordan -- Jefferson Funeral Home is also

19 involved as a DBA, which it's not, it's a corporation.

20 11 USC 109(e) specifically says that a trust can't be a debtor.

21 there's a line of cases that I brought with me that says --

22           THE COURT:  Uh-huh.

23           MR. DZALIO:  -- a trust cannot be a debtor in Chapter

24 13.  I think Your Honor even mentioned that prior to us going

25 out and resolving it.  So I don't think there's a basis for the

1  Chapter 13 trustee's objection to getting this trust out of

2  this proceeding in accordance with our agreement.

3           THE COURT:  No.  I think their objection is the money

4  is going to go to the debtor, who was the owner of the trust.

5           MR. DZALIO:  The money has to follow the titleholder,

6  the titleholder is the trust; there's no question about that.

7  We're obligated to pay the money to the titleholder.

8           THE COURT:  Right.  I don't disagree.  Who is the

9  debtor.

10          MR. DZALIO:  Pardon me?

11          THE COURT:  Who is the debtor.

12          MR. DZALIO:  Yes.  Well, no.  No.

13          THE COURT:  The trust -- you're going to pay it to the

14  trust, but the trust is owned by the debtor.

15          MR. DZALIO:  Mr. Jefferson is the trust manager of the

16  trust.

17          THE COURT:  He owns the trust.  He owns everything in

18  it, I've read it.

19          MR. DZALIO:  Right.

20          THE COURT:  Okay.

21          MR. DZALIO:  But I'm trying to draw a distinction

22  between --

23          THE COURT:  Yes.  I know.  It's a pretty fine

24  distinction.  Yeah.  Okay.

25          UNIDENTIFIED FEMALE SPEAKER:  Your Honor, I don't

1   disagree that there is a distinction between the trust and the

2   debtor.  The problem in this case is, we agree the trust cannot

3   be a Chapter 13 debtor, the trust is not a Chapter 13 debtor,

4   but the debtor filed this bankruptcy and now is asking the

5   Court to exercise jurisdiction over that trust property.  The

6   Court is doing so and, as the Court observed, the debtor is I

7   believe the grantor of this trust, has substantial, if not all,

8   control over trust assets.

9       So the trustee believes that if this money is received,

10  once it goes into that trust it's within the exclusive control

11  of the debtor, and it is his to do as he wishes.  At some point

12  it should become property of this bankruptcy estate; it's money

13  he has access to.

14          THE COURT:  Is this an issue we could reserve for a

15  later hearing, and that any money paid into the trust will be

16  kept in that trust until we resolve to whom it should go?

17          UNIDENTIFIED FEMALE SPEAKER:  I think we could do

18  that.

19          THE COURT:  Mr. Cramer.

20          MR. CRAMER:  Yes, Your Honor.  I believe we can do

21  that.

22          THE COURT:  Okay.  Let us do that then.

23      And we need to pick a date, either the 11th or the 25th

24  for the confirmation.

25          MR. CRAMER:  I believe there was part of the agreement

1   to also continue the hearing on the motion for relief --

2           THE COURT:  Yes.

3           MR. CRAMER:  -- in the event we had to have it.  Would

4   that be able to be heard on the 11th or the 25th as well?

5           THE COURT:  Yes.

6           MR. CRAMER:  Is there a notice issue?

7           UNIDENTIFIED FEMALE SPEAKER:  I don't believe there is

8   a notice issue with either, because I believe all of the

9   objecting parties are present unless Mercedes may have an

10  objection.  I'm not sure.

11          THE COURT:  If you all want to get together and let us

12  know later once you've checked your calendars, that would be

13  fine.

14          MR. CRAMER:  If we could do that.

15          THE COURT:  Okay.

16          MR. CRAMER:  We'll just make sure that we can have

17  witnesses here.

18          THE COURT:  All right.  Mr. Cramer, how are you going

19  to preserve the money in the trust?  Are you going to put it in

20  your attorney's trust account until the Court makes a decision

21  on that?

22          MR. CRAMER:  We can, Your Honor.

23          THE COURT:  Why don't we do that.

24          MR. CRAMER:  All right.

25          THE COURT:  Okay.  And we'll wait -- now, are we also

1  waiting for City's -- no, I think there was an agreement that

2  you were going to submit that later.  Okay.  We are waiting on

3  the attorney fee list from Arvest Bank.

4       Let's take a short recess until those fax papers come in.

5       (A recess was had, after which the following was had in

6  open court:)

7            THE COURT:  Okay.  The debtor's counsel has been

8  provided with a list of attorney fees by the -- by Arvest Bank.

9       Mr. Cramer, do you agree with those?

10           MR. CRAMER:  Yes, Your Honor.  The attorney fees

11  presented by Arvest in the total amount of 55 -- 5,521.25 with

12  cost of 435.55 I find to be reasonable.

13           THE COURT:  Okay.  Okay.  Thank you.  So then we're

14  just waiting on the attorney fees to be submitted by City Bank,

15  and that will be done later.

16           MR. DZALIO:  Your Honor, we reached an agreement that

17  I'll prepare a fee application --

18           THE COURT:  Right.

19           MR. DZALIO:  -- or a bill and submit it to Mr. Cramer,

20  and obtain a stipulation.  If we can't stipulate, I'll submit

21  one to you.

22           THE COURT:  Okay.  And don't forget about

23  negotiations, talking is an issue.

24           MR. DZALIO:  Of course, Your Honor.

25           THE COURT:  Okay.  Anything else to come before the

1    Court?

2         MR. ROSELL:  Not at this time, Your Honor.

3         THE COURT:  Okay.  Let me -- I don't know if you --

4    you all have your clients here.  Let me just tell your clients,

5    this was an exceedingly complex issue with four parties and

6    multiple issues.  And for this to get resolved in just a two

7    hour, or two and a half hour sit down to talk is just highly

8    unusual.  So you have all chosen your attorneys very well.

9    They have done an excellent job for you.  They have saved you a

10   lot of money, too, by settling this rather than going through a

11   hearing, which would probably not have ended today, would have

12   gone into tomorrow.  So congratulation on counsel for settling

13   this, and congratulations on your clients for hiring you.

14   You've all done a very good job.

15       We are adjourned.

16                    (End of Proceedings)

17                      *  *  *  *  *

18

19                  REPORTER'S CERTIFICATE

20

21       I hereby certify that the aforegoing was transcribed

22   from an electronic recording of proceedings to the best of my

23   ability.

24                          s/ Jeanne Ring_____
                            B. Jeanne Ring, RDR
25

<u>**RESOLUTION 12-10**</u>

**RESOLUTION AUTHORIZING AND APPROVING ACQUISITION OF CERTAIN REAL PROPERTY FOR THE LAWTON DOWNTOWN REDEVELOPMENT PROJECT**

**WHEREAS**, the City of Lawton ("City") has undertaken a program of redevelopment of blighted areas within the City and is engaged in carrying out the D-6 Urban Renewal Plan ("Urban Renewal Plan") in an area located in the City ("Project Area"); and

**WHEREAS**, a principal objective of the Urban Renewal Plan is the revitalization of a key portion of Downtown Lawton through clearance, redevelopment, and rehabilitation measures in order to create a vibrant commercial center with supporting and ancillary residential, hotel, office, and other mixed-use developments in the Central Business District; and

**WHEREAS**, the City has also adopted the Amended Lawton Downtown Economic Development Project Plan ("Project Plan") determining that the redevelopment is a military growth impact project and authorizing tax apportionment financing to implement certain objectives of the Urban Renewal Plan; and

**WHEREAS**, the Project Plan represents a substantial step in implementing the recommendations and responding to the findings contained in the Fort Sill Regional Growth Management Plan by, among other things, authorizing the use of a portion of tax increments to support quality of life enhancements in the area; and

**WHEREAS**, the Lawton Economic Development Authority, a public trust ("LEDA") has previously publicly invited redevelopment proposals for redevelopment of the portion of the Project Area bounded by Gore Boulevard on the south, Ferris Avenue on the north, Railroad Street on the east, and NW 2nd Street on the west ("Property"); and

**WHEREAS**, LEDA has approved a redevelopment agreement with Lawton Lodging, LLC, ("Hotel Agreement") for the development of a hotel and conference center in a portion of the Property, in accordance with the Urban Renewal Plan and the terms, conditions, and obligations contained in the Hotel Agreement; and

**WHEREAS**, LEDA has approved a redevelopment agreement with Lawton Town Center, LLC, ("Retail Agreement") to develop the balance of the Property for commercial uses, principally a retail shopping center, in accordance with the Urban Renewal Plan and the terms of the Retail Agreement; and

**WHEREAS**, the Board of Trustees of LEDA deems it appropriate and desirable and in the public interest to approve and authorizeacquisition of certain real property.

**NOW THEREFORE BE IT RESOLVED** by the Board of Trustees of the Lawton Economic Development Authority as follows:

**EXHIBIT**

**2**

1.    The Lawton Economic Development Authority is authorized to acquire the real property, more particularly described as Lots 2, 3, and Lots 12 through 16, inclusive, Block 65, North Addition to the City of Lawton, Comanche County, Oklahoma, within the Project Area; to accept an assignment of bid in case no. CJ-2011-796 in the District Court of Comanche County, Oklahoma, which includes rights to said property, and to exercise rights thereunder and any settlement with respect thereto for the sum of $394,500.00 plus costs in connection therewith.

2.    The Chairman and officers of LEDA, its Executive Director/Manager, and Legal Counsel are authorized to approve and execute agreements to carry out the acquisition authorized by this Resolution, including acceptance of assignment of rights, approval and execution of settlement agreements and stipulated orders in pending litigation, and to make payments therefor.

**ADOPTED** the 26th day of July, 2012.

LAWTON ECONOMIC DEVELOPMENT AUTHORITY

By: _____
**Fred L. Fitch, Chairman**

I, the undersigned, the duly qualified and acting Secretary of the Lawton Economic Development Authority (LEDA), hereby certify that the above and foregoing is a true and complete copy of the Resolution duly adopted by the Trustees of LEDA and of the proceedings of LEDA in the adoption of said Resolution on the date therein set out as shown by the records of my office.

I further certify that in conformity with the Oklahoma Open Meetings Act (Title 25, Oklahoma Statutes, 2001, Section 301-314, inclusive, as amended), notice of this meeting was given in conformity with the requirements of law.

_____
**Larry Neal, Secretary**

2